## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LESTER JON RUSTON** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| 5. ) | **Civil Action No. 06-0782 (RMU))** |
| ) | |
| **BARBARA RIGGS,** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT'S MEMORANDUM OF POINTS
## AND AUTHORITIES IN SUPPORT OF
## HER MOTION TO DISMISS OR TO TRANSFER AND
## OMNIBUS OPPOSITION TO PLAINTIFF'S MOTIONS
## FOR PRELIMINARY INJUNCTION, TO COMPEL, FOR
## DEFAULT JUDGMENT, FOR DISCOVERY AND
## EMERGENCY MOTION FOR SANCTIONS

The Defendant, through counsel, the United States Attorney for the District of Columbia, respectfully submits the following memorandum of points and authorities in support of Defendant's motion to dismiss or to transfer. Plaintiff's claims are lacking in merit and, even apart from their merit, relate to witnesses, events and evidence in Texas and should be transferred to the United States District Court for the Northern District of Texas.

## I. BACKGROUND

Plaintiff, Lester Jon Ruston, is a civil detainee currently held at the Federal Medical Center for Prisoners in Springfield, Missouri. Plaintiff's detention follows his May 22, 2004 arrest in Farmers Branch, Texas for threatening to kill a magistrate judge. See R. 11[1] (Exhibit A to Pltf's Motion to Compel ("Cmpl. Mtn."); Exhibit B to Supplementation to Pltf's Motion to Compel ("Supp. Cmpl. Mtn.")). Although it is unclear from the Complaint what specific causes of action

---

[1] "R. __" refers to the numerical listing for filings on the District Court docket in this case.

Plaintiff is advancing, it seems that Plaintiff believes his civil and constitutional rights have been violated stemming from a series of events connected to his May 2004 arrest, or earlier events. See Compl. at ¶ 9 (reference to conspiracy beginning in 2000).

Plaintiff states that Defendant and other members of the United States Secret Service are conspiring to deprive him of his rights and to bring him physical harm. Compl. at ¶¶ 4, 6-11. Plaintiff contends that, in May 2004, Secret Service agents were "stalking" him and attempted to murder him. Compl. at ¶ 6. Plaintiff claims that he was targeted because he had served as a " 'witness,' litigant and informant against Government officials" who prosecuted him in 2001. Compl. at ¶ 6. Specifically, Plaintiff names Agent Jeffery Don Elmore as the "mastermind" of the attempts on his life. Compl. at ¶ 6. Plaintiff makes a broad allegation that Ms. Riggs is conspiring with Agent Elmore by aiding him in acts of perjury and obstruction against the Plaintiff. Compl. at ¶ 7. Plaintiff alleges no specific facts in support of this contention. As set forth in the Complaint, Plaintiff asserts that throughout his civil detention, Defendant has continuously conspired to interfere with his rights. Compl. at ¶¶ 7-11, 13.

Plaintiff makes another broad allegation that in June 2004, Ms. Riggs deprived Plaintiff of his constitutional due process rights by disregarding "the duties of her office." Compl. at ¶ 12. Plaintiff offers no specific facts to support this claim. In an affidavit submitted with the Complaint, Plaintiff further broadly alleges that Ms. Riggs tampered with and delayed his mail in retaliation for his initiation of this and other lawsuits. See Pltf's Affidavit in Support of Discovery ("Aff. Dis.") at 2. In addition, Plaintiff contends that the conspiracy may have interfered with his volunteer efforts as a recruiter for the U.S. Navy in May 2004. Compl. at ¶ 13.

Plaintiff further alleges, based on what appears to be pure speculation, that Ms. Riggs and her staff may have ties to the Mafia and are in violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"). Compl. at ¶8. Plaintiff claims there is evidence of this violation and that he had filed a Freedom of Information Act ("FOIA") request to gain access to these documents. Compl. at ¶ 8. Plaintiff states that the record of his FOIA request can be found under FOIA Request # 20050373.[2] Compl. at ¶ 8. According to Plaintiff, Defendant withheld these documents in July 2005. Plaintiff alleges that Defendant's RICO violation involves an illegal drug ring. Aff. Dis. at 1. Again, Plaintiff offers no specific facts to support this statement. Overall, it is not clear from the Complaint or any other documents submitted by Plaintiff if this alleged RICO violation is part of the previously described alleged conspiracy against Plaintiff or whether there is any connection between Plaintiff and this RICO violation.

It is not clear whether Plaintiff is attempting to assert a FOIA claim or only referencing it. Compl. at ¶ 4. Plaintiff states that he requested information on a former U.S. Marine, name unknown, who Plaintiff believes has been hired to kill him. See Motion to Compel ("Mot. Com.") at 2. Plaintiff claims the former Marine worked with Agent Elmore in May 2004 when Plaintiff believes he was being stalked. Mot. Com. at 2. Plaintiff identifies his request as FOIA #2005USMS8783. Compl. at ¶ 4. Plaintiff received redacted documents in response to his request from the U.S. Department of Justice. See Supplementation to Motion to Compel, Exhibit B. Despite the response from the Department of Justice, Plaintiff believes that Defendant suppressed the information he had requested under FOIA. Compl. at ¶ 4. Whether this action is part of a Plaintiff's alleged conspiracy or an effort to advance a FOIA claim is not clear.

In addition to his constitutional and civil claims, Plaintiff alleges a variety of tort actions against the Defendant. Plaintiff states that Defendant's involvement in the alleged conspiracy was

---

[2] Plaintiff has another pending case in this District in which he is advancing a FOIA claim in Civil Action No. 05-2314 (RMU). It is unclear if this case seeks information that Plaintiff references in the Complaint in this case.

part of an effort intentionally to inflict emotional distress on him. Compl. at ¶ 11. Plaintiff relies on an undated letter from the Defendant as evidence of this alleged harm. Aff. Dis. Exhibit A. Plaintiff also alleges that Defendant has conspired to commit battery on the Plaintiff through forced medications. See Emergency Petition for a Preliminary Injunction at 1. Although Plaintiff alleges several other intentional torts in the Preliminary Statement of his Complaint, these claims are not detailed or developed further in the Complaint or any of Plaintiff's other filings.

The Complaint fails to describe clearly the specific claims on which Plaintiff seeks recovery. However, the Complaint clearly implicates constitutional and civil claims under Bivens and the FTCA and, possibly, a claim under the FOIA. Compl. at ¶¶ 6-13. Plaintiff seeks punitive damages of $10,000, compensation for all costs related to litigation, and various injunctions against parties involved.

Plaintiff has previously filed at least three similar suits against Defendant U.S. Secret Service: (1) Ruston v. Bush, C.A. 01-01052-L (N.D. TX) (hereinafter "Bush I"), (2) Ruston v. Bush, C.A. 01-01818-H (N.D. TX) ("Bush II"), and (3) Ruston v. U.S. Dep't. of Justice, C.A. 05-03304 (RED) (W.D. MO) ("Justice"). The Courts in each of these cases dismissed the complaints as frivolous. See Pacer Docket Entries 6, 7, and 8 (for C.A. 01-01052-L (N.D. TX); Pacer Docket Entries 11, 14, and 15 (for C.A. 01-01818-H (N.D. TX); and Pacer Docket Entry 3 (for C.A. 05-03304 (RED) (W.D. MO). See the complaints from these suits, attached as Exhibits 1 - 3, respectively.

## II.    STANDARD OF REVIEW

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules") should be granted if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276

(D.C. Cir. 1994).  Though the plaintiff is given the benefit of all inferences that reasonably can be derived from the facts alleged in the complaint, the court need not accept inferences that are not supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the form of factual allegations. Id.

## III.    ARGUMENT

**A.    The Complaint is Defective and Should be Dismissed.**

    **1.    The Complaint Fails to Satisfy Fundamental Pleading Requirements and Should be Dismissed.**

The Complaint, which is not well-written, while using some of the same terms and catch phrases as complaints filed by Plaintiff in other, similar cases filed in this and other districts, genuinely fails to give Defendant fair notice of just what conduct is subjected to suit.  Plaintiff makes a number of conclusory allegations, with very few, if any, supporting factual allegations.  After filing the Complaint, Plaintiff has continued to file various motions in which he has introduced new allegations.  In many instances, the numerous federal statutes and constitutional amendments cited by the Plaintiff are not linked to any specific allegations or facts.  In the final analysis, Defendant is left to speculate as to just what claims Plaintiff is intending to advance.

Under the Federal Rules, the principal function of the Complaint is to give the Defendant fair notice of the claims asserted so that the Defendant can make an adequate response, either by answer or dispositive motion.  Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint filed in the federal court contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  "The purpose of the rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." Brown v.

Califfano, 75 F.R.D. 497, 498 (D.D.C. 1977) (citing 2A Moore, Federal Practice ¶ 8.13; 5 Wright

& Miller, Federal Practice and Procedure, § 1217).  "Beyond this, the rule serves to sharpen the

issues to be litigated . . .."  Brown, 75 F.R.D. at 498 (dismissing *pro se* plaintiff's complaint because

it failed reasonably to inform the adverse party of the cause of action).

    The Complaint filed by Plaintiff lacks the necessary clarity and specificity to permit

Defendant to comprehend the nature of the claims Plaintiff is asserting.  The Complaint sets forth

primarily conclusory allegations, followed by Claims for Relief in which Plaintiff simply requests

a variety of injunctions involving parties and organizations not involved in this action.  Plaintiff's

Complaint is so vague and ambiguous with respect to which specific events underlie his claims that

it fails to satisfy the minimal pleading requirements, even for a *pro se* litigant and should be

dismissed. See Brown, 75 F.R.D. at 498-499.  See also Turner v. F.B.I., 2005 WL 3201444 (D.D.C.

Oct 31, 2005) (Civ. Act. No. 04-1491(RMU)).

    **2.    The Complaint Represents the Latest of a Number of Successive Frivolous Suits
        Filed by Plaintiff in Federal Courts and Should be Dismissed With Prejudice.**

    To the extent that the Complaint can be comprehended, it appears to seek to advance criminal

violations as civil actions.  Such claims are clearly frivolous.  It is well-established that a civil

litigant may not, in the main, use criminal violations as a basis for advancing civil causes of action.

The Court's description of the Complaint in Brown is certainly an apt description of the Complaint

in this case:

> The pleading filed by the plaintiff in this case is indeed a confused and rambling
> narrative of charges and conclusions concerning numerous persons, organizations
> and agencies. The complaint contains an untidy assortment of claims that are neither
> plainly nor concisely stated, nor meaningfully distinguished from bold conclusions,
> sharp harangues and personal comments. Nor has plaintiff alleged with even modest
> particularity the dates and places of the transactions of which he complains. It
> belabors the obvious to conclude that the complaint filed in this action falls far short
> of the admittedly liberal standard set in F.R.Civ.P. 8(a).

Brown, 75 F.R.D. at 499.  As noted above, apart from the two cases filed in this District, one of

which has already been transferred to the NDTX., Plaintiff has filed three similar suits in other

districts, two in Texas and one in Missouri.  A finding that a suit is frivolous typically justifies the

district court's decision to dismiss the case without prejudice, "[b]ut where, as here, the [P]laintiff

has shown that he is no stranger to the courts, having filed [several] previous lawsuits akin to this

one, dismissal with prejudice is not inappropriate." Brown v. Califfano, 75 F.R.D. at 499, citing

Hutter v. Schraml, 51 F.R.D. 519, 522 (E.D.Wisc.1970).

### 3.    Plaintiff's General Allegations of Conspiracy and RICO Violations Are Insufficient to Support Actionable Claims

**Conspiracy**

Plaintiff's general and conclusory allegations of a "conspiracy" are insufficient to support

actionable claims.  As stated by the Court in In re Orthopedic Bone Screw Products Liability

Litigation, 193 F.3d 781 (3rd Cir.1999),

> The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, ' "actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor." ' Posner v. Essex Ins. Co., 178 F.3d 1209, 1218 (11th Cir.1999) (quoting Williams Elec. Co. v. Honeywell, Inc., 772 F.Supp. 1225, 1239 (N.D.Fla.1991)) (applying Florida law); accord Applied Equip. Corp. v. Litton Saudi Arabia Ltd., [869 P.2d 454, 457] ([Cal.] 1994) ('Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.'); Stoldt v. City of Toronto, [678 P.2d 153, 161] ([Kan.] 1984) ('Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy.'); Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.,[665 A.2d 1038, 1045] ([Md.]1995) ('No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.') (citation omitted); Alexander & Alexander of N.Y., Inc. v. Fritzen, [503 N.E.2d 102, 102-03] ([N.Y.]1986) ('[A] mere conspiracy to commit a tort is never of itself a cause of action. Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.') (citations omitted).

In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d at 789.  See also, Wisdom v.

First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 408 (8th Cir. 1999) ("Though a bare criminal

statute does not necessarily preclude an implied private right of action, there should 'at least [be] a

statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.' "),

citing Cort v. Ash, 422 U.S. 66, 79 (1975);[3] Risley v. Hawk, 918 F.Supp. 18, 21 (D.D.C. 1996)

(certain criminal statutes did not create private right of action).  Accordingly, such allegations are

no basis for Plaintiff's suit to survive dismissal.

## RICO

In Beck v. Prupis, 529 U.S. 494 (2000), the Supreme Court explained that Congress enacted

RICO to eradicate organized crime in this country, providing severe criminal penalties for violations

of Title 18 U.S.C., § 1962, and also a civil cause of action for a person's injury to business or

property stemming from a violation of Section 1962. Id. at 496; 18 U.S.C. § 1962-1964.  Section

1962 makes it unlawful to receive income or collect a debt from a pattern of racketeering activity;

to invest any such monies received or collected in any enterprise affecting interstate or foreign

commerce; to acquire or maintain an interest in such an enterprise through racketeering activity; to

conduct any such enterprise's affairs through a pattern of racketeering activity; or to conspire to

engage in the above activities.  18 U.S.C. § 1962(a) - (d).  Racketeering activities include extortion,

bribery, counterfeiting, embezzlement, mail and wire fraud, witness tampering and the like.  Title

18 U.S.C., § 1961(l).

Plaintiff's RICO claims must be dismissed under Rule 12(b)(6) as the Plaintiff does not

allege facts which constitute RICO violations.  A violation of the RICO Act consists of four

---

[3] See also Thompson v. Thompson, 484 U.S. 174, 179 (1988) (holding that a private remedy
will not be implied unless legislative intent can be inferred from statutory language or elsewhere);
Touche Ross & Co. v. Redington, 442 U.S. 560 (1979).

elements: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. Pyramid Securities Ltd. v. IB Resolution Inc., 924 F.2d 1114 (D.C. Cir 1991) (quoting Sedima, SPRL v. Imrex Co, 473 U.S. 479, 496 (1985). The RICO Act defines the term "pattern of racketeering activity" as requiring the commission of at least two predicate racketeering offenses over a ten year period. See 18 U.S.C. § 1961(5). These predicate offenses are acts punishable under certain state and federal criminal laws, including mail and wire fraud. See 18 U.S.C. § 1961(1)(B). The Supreme Court has defined "pattern" to include two elements: relatedness and continuity. H.J. Inc v. Northwestern Bell Telephone Co., 492 U.S. 229, 236-240 (1989). To prove a pattern of racketeering a plaintiff or prosecutor must show that the racketeering elements are related, and that they amount to or pose a threat of continued criminal activity. Id. Continuity may be proved by establishing either a "closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." Id.

To determine whether a pattern of racketeering has occurred, the D.C. Circuit has held that courts should consider the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity. Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265 (D.C. Cir. 1995), quoting Kehr Packages, Inc v. Fidelcor, 926 F.2d 1406, 1411-13 (3d Cir. 1991). The court in Edmonson indicated that if a plaintiff alleges only a single scheme, a single injury, and a few victims, it is "virtually impossible for plaintiffs to state a RICO violation." Id. Although the term "scheme" is imprecise, for it to retain any utility, it cannot be so easily invoked that it allows, for instance, such closely related accounting misrepresentations involving a single project to be considered distinct schemes. See also Western v. Associates Limited Partnership v. Market Square Associates, 235 F.3d 629, 633 (D.C. Cir. 2001) (no legally cognizable claim where

plaintiff alleged single scheme, a single injury, and a single victim).  In Edmonson, the plaintiffs

alleged a RICO violation based on a scheme to prevent them from purchasing an apartment complex.

The court held that though the plaintiffs had pleaded an adequate number of predicate offenses by

the defendants, the fact that it was a single scheme, a single injury and a small number of victims

prevented it from qualifying as a RICO offense.  Edmonson, 48 F.3d at 1265.  In this case, Plaintiff

has failed to allege a pattern of racketeering and clearly fails to satisfy the elements of the RICO

statute.  Under the holding in Edmonson, the Plaintiff has failed to state a RICO claim, and this

claim must therefore be dismissed.

Courts have also required under the civil RICO statute that the plaintiff's injury be sustained

to business or property.  Nix v. Hoke, 62 F.Supp.2d 110, 116 (D.D.C. 1999), citing Doe v. Roe, 958

F.2d 763, 767 (7th Cir. 1992) (The "terms 'business or property' are words of limitation which

preclude recovery for personal injuries and the pecuniary losses incurred therefrom.")  Plaintiff

claims that Defendant and her coconspirators were motivated by his status as a witness, litigant and

informant.  Plaintiff does not allege the requisite injury to business or property to satisfy the

requirements for a RICO claim.  Therefore, Plaintiff's generalized RICO allegations provide no

barrier to dismissal.[4]

---

[4]  Apart from its substantive defects, Plaintiff's RICO allegations are subject to dismissal
under Rule 12(b)(6) for failure to state a claim because of pleading defects.  To establish a RICO
claim, Plaintiff must identify and specifically describe the alleged enterprise.  "Plaintiffs in a RICO
claim must plead specific facts, not merely conclusory allegations, which establish the enterprise."
Scheck v. General Electric Corp., 1992 WL 13219 (D.D.C. 1992), quoting Manax v. McNamara, 842
F.2d 808, 811 (5th Cir. 1988).  Plaintiff, however, fails to provide sufficient detail about how and
when the Defendant conspired against him.

**B.    Plaintiff's Official Capacity Suit is Not Actionable and Should Be Dismissed.**

**1.    To the Extent Plaintiff Seeks Relief from Defendant in an Official Capacity, Such Claims Must Be Dismissed Pursuant to the FTCA.**

The Federal Tort Claims Act is the exclusive remedy to obtain money damages arising from the negligent or wrongful act of any federal employee acting within the scope of his or her employment. See 28 U.S.C. § 2679(b)(1). However, where the Attorney General or his designee certifies that an individual defendant was acting within the scope of his or her federal employment at the time of the incident in question, the federal employee is granted immunity and the United States is substituted as the proper defendant. See 28 U.S.C. § 2679(d)(1); Galvin v. OSHA, 860 F.2d 181, 183 (5th Cir. 1988) ("an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction"). In the instant case, Defendant's decisions whether to seek the Plaintiff's arrest, whether and how to support a prosecution of him and whether to seek or support his commitment to a mental hospital were clearly actions within the scope of the her employment. The Chief of the Civil Division for the Office of the United States Attorney for the District of Columbia, a designee of the Attorney General, has certified this fact. See Certification (attached as Exhibit 4).

Accordingly, Defendant Riggs should be afforded immunity for actions taken as a federal official that are the subject of the Complaint, and the official-capacity civil action must be deemed to be one against the United States under the FTCA. See 28 U.S.C. § 2679(d)(1). Once the United States is substituted, all claims against it must be dismissed because, as discussed below, there has been no waiver of sovereign immunity for such claims.

2.        **No Statutory Consent to Suit Authorizes this Action.**

Sovereign immunity bars all suits against the United States except in accordance with the explicit terms of the statutory waiver of such immunity. Cox v. Secretary of Labor, 739 F. Supp. 29, 30 (D.D.C. 1990); see also, United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953-54 (1976); United States v. Mitchell, 445 U.S. 535, 538 (1980); Kline v. Republic of El Salvador, 603 F. Supp. 1313, 1316 (D.D.C. 1985). Congressional consent to suit in this Court, a waiver of the government's traditional immunity, must be explicit and is strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986); United States v. Mitchell, 445 U.S. at 538; Fidelity Construction Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983). A waiver of sovereign immunity, therefore, cannot be implied, but must be expressed "unequivocally" by Congress. Testan, 424 U.S. at 399, 96 S.Ct. 953-54; United States v. King, 395 U.S. 1, 4 (1969). Thus, absent clear congressional consent to entertain a claim against the United States, the District Court lacks authority to grant relief. Testan, 424 U.S. at 399, 96 S.Ct. 953-54; United States v. Sherwood, 312 U.S. 584, 586 (1941).

As set forth herein, Plaintiff has failed to satisfy the requirement of a waiver of this immunity under the circumstances presented and has failed to state a claim for relief. The bulk of Plaintiff's claims are constitutional in nature. See Compl. at ¶ 4. Accordingly, his claims are still barred by the FTCA. By its terms, the FTCA exposes the United States to liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Courts have interpreted this to mean that only claims under state law are cognizable under the FTCA, and that the United States has not rendered itself liable for constitutional tort claims. FDIC v. Meyer, 510 U.S. 471, 477-78 (1994) ([b]y definition, federal law, not state law, provides the source of liability for a claim

alleging the deprivation of a federal constitutional right). The United States is therefore not liable

for the constitutional torts of its employees. <u>Kline v. Republic of El Salvador</u>, 603 F. Supp. 1313,

1316-17 (D.D.C. 1985). Therefore, dismissal of any cognizable constitutional claim, pursuant to the

FTCA, is proper as to Plaintiff's official-capacity suit.[5]

> 3.   **Plaintiff's FTCA Claims against Should Be Barred by the Doctrine of *Res Judicata*.**

This Complaint should be dismissed under the doctrine of *res judicata*. The Supreme Court

has noted, "[*Res judicata*] is demanded by the very object for which civil courts have been

established, which is to secure the peace and repose of society by the settlement of matters capable

of judicial determination. Its enforcement is essential to the maintenance of social order." <u>Southern</u>

<u>Pac. R.R. Co. v. United States</u>, 168 U.S. 1, 49 (1897). Similarly, this Court has stated:

> [T]here must some time be an end to litigation, not only in the interest of the adverse
> party who should not be vexed twice or thrice or even more times for the same cause,
> but also in the interest of the state in settled law and legal relations and that of courts
> and litigants in an orderly judicial process....

<u>Westgate-Sun Harbor Co. v. Watson,</u> 206 F.2d 458, 462 (D.C. Cir. 1953).

When a court of competent jurisdiction has already entered a final judgment on the merits

of a cause of action, the parties to that suit are bound "not only as to things which were determined

but as to all matters which might have been determined as well." <u>Tutt v. Doby</u>, 459 F.2d 1195, 1197,

(D.C. Cir. 1972); <u>see</u> <u>also</u>, <u>Lawlor v. National Screen Service Corp.</u>, 349 U.S. 322, 326 (1955);

---

[5]   Many of the events that Plaintiff complains about are rather old. Plaintiff's FTCA based claims are barred under the FTCA limitations period. The FTCA provides in relevant part: "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues. . ." 28 U.S.C. § 2401(b). This two-year statute of limitations is jurisdictional and must be fully satisfied or otherwise an FTCA suit cannot be maintained. <u>United States</u> v. <u>Kubrick</u>, 444 U.S. 111, 117-118, n.10 (1979) (FTCA is a waiver of sovereign immunity and the FTCA's statute of limitations "is a condition of that waiver"); <u>Humphreys</u> v. <u>United States</u>, 272 F.2d 411, 412 (9th Cir. 1959); <u>Amwest Surety Ins. Co.</u> v. <u>United States</u>, 28 F.3d 690, 694 (7th Cir. 1994).

Federated Dept. Stores v. Moitie, 452 U.S. 394 (1981). Under this rule of *res judicata* or "claim preclusion," a subsequent suit will be barred if there has been prior litigation: (1) involving the same claim or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction. See Blonder-Tongue Lab., Inc. v. Univ. of Ill. Foundation, 402 U.S. 313, 323-24 (1971); see also, I.A.M. Natl. Pension Fund, Benefit Plan A v. Indus. Gear Mfg. Co., 723 F.2d 944, 946-947, 950 (D.C. Cir.1983) (hereinafter "I.A.M. Natl. Pension Fund"); Semler v. Psychiatric Institute of Washington, D.C., 575 F.2d 922, 927 (D.C. Cir.1978) ("Where the final judgment is rendered in favor of defendant, plaintiff is barred from suing defendant on the same cause of action.").

*Res judicata* forecloses a cause of action that is based on the same "nucleus of facts," Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984), and which comprises "any part of the transaction, or series of connected transactions, out of which [a prior] action arose." Stanton v. District of Columbia Court of Appeals, 127 F.3d 72, 78 (D.C. Cir. 1997) (internal citations omitted). To determine whether or not two suits involve the same cause of action, this Circuit has adopted the "transactional" approach. Id. A claim, or cause of action, consists of "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. In assessing whether facts constitute a "transaction" or "series of transactions" the court must consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id.

Here, all three prior suits and the case at bar arise from the same underlying series of transactions – Plaintiff's arrest, prosecution and subsequent commitment to a mental health facility. Plaintiff alleged the same wrong in all of these suits – that the U.S. Secret Service conspired with

others falsely to accuse him of threats, to arrest him, and to incarcerate him. Compare 01-01052-L (N.D. TX), Complaint ¶ V ("On or about January 8, 2001, Jeffrey Don Elmore of the U.S. Secret Service conspired with George W. Bush, David Hamilton, the Plano Police, and Plano I.S.D., ET AL. to arrest me, with a warrant, falsely accuse me of "threats" and commit me to the Terrell State Hospital."); 01-01818-H (N.D. TX), Complaint ¶ I ("On or about January 8, 2001, the Defendant's [sic] did knowingly, willfully, and purposefully engage in an organized criminal conspiracy . . . by violating the Plaintiff's civil rights) and Complaint ("Facts" Section) ("Plaintiff was taken from Parkland Hospital, without any court proceedings, to the Terrell State Hospital, on fraudulent paperwork provided by Jeffrey Don Elmore . . .); 05-03304 (RED) (W.D. MO), Complaint ¶ 5 ([T]he Defendant's [sic] are attempting a malicious act of false imprisonment and malicious prosecution, to cover up a conspiracy to commit attempted murder of the Plaintiff, which occurred on or about May of 2004"); 06-0782 (RMU), Compl. ¶ 7 ("On or about October of 2005, the Defendant engaged in a conspiracy to violate the Plaintiff's statutory and constitutional rights . . . Said "conspiracy" includes obstruction of justice and aiding and abetting perjury committed by Jeffrey Don Elmore." and Compl., Attached Affidavit ("Jeffrey Don Elmore of the Defendants, has conspired to harass, torture, and violate the civil and constitutional rights of the Plaintiff for five years . . . ).   In all of these suits, Plaintiff identified Secret Service agent Elmore as the Defendant's primary actor in a five year conspiracy against him.  In all of these suits, Plaintiff seeks essentially the same remedies in one or more of his previous suits- compensatory damages (01-01818 ("Prayer and Request for Relief" section)), punitive damages (01-01818 ("Prayer and Request for Relief" section) and 05-3304, (Relief Requested, Section D), declaratory judgment that the defendant violated his statutory and constitutional rights (05-3304 (Relief Requested, Section A2), and injunctive relief enjoining Defendant from further conspiring to violate any of Plaintiff's statutory

or constitutional rights (01-01052, (Relief Section states "I want a Federal Judge to issue an Injunction, preventing prosecution of these cases pending an FBI investigation and award damages.") and (05-3304, Relief Requested, Section B.1 ("Issue an Injunction ordering . . . any agent of Defendant's to cease and desist any further acts of obstruction of justice.").

The common "nucleus of facts" in all of Plaintiff's complaints is that Defendant (through its various agents) conspired to deprive him of his statutory and constitutional rights, thus resulting in his unlawful arrest and subsequent civil commitment. Although the phraseology and emphasis differs in each complaint, Appellant still seeks the same remedies: (1) money for lost income, (2) punitive damages against allegedly corrupt federal officials, (3) injunctive relief against the Defendant conspiring to violate Plaintiff's statutory and constitutional rights, and (4) declaratory judgment that Defendant violated Plaintiff's statutory and constitutional rights. Importantly, a plaintiff's characterization of the pleadings is not controlling. See Apotex, Inc. v. FDA, 393 F.3d 210, 217-218 (D.C. Cir.2004) (raising new legal theory based on previously litigated facts is barred); Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984) (for *res judicata* purposes, a claim is based on "the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies").[6] Instead, the focus is on the true nature of the relief sought as it relates to the underlying claim. See Page, 729 F.2d at 820. Accordingly, because Plaintiff sought the same relief and alleged the same tort – the deprivation of statutory and constitutional rights– both suits arose from the same "transaction." See Stanton, 127 F.3d at 78 (discussing "claims" and "transactions"). It is apparent from the face of each complaint that Plaintiff and the Defendant, U.S. Secret Service, were parties to all actions.

---

[6] See also, National Committee for New River, Inc. v. Federal Energy Regulatory Com'n, 433 F.3d 830, 833 (D.C. Cir. 2005).

The final two elements of the *res judicata* analysis are whether there has been a final judgment on the merits by a court of competent jurisdiction.  See Blonder-Tongue Lab., Inc. v. Univ. of Ill. Foundation, 402 U.S. at 323-24; see also, I.A.M. Natl. Pension Fund, 723 F.2d at 946-947, 950.  A finding that a suit is frivolous typically results from a substantive evaluation of the nature of the claims advanced, which should be binding on the litigant. See Brown v. Califfano, 75 F.R.D. at 499.  Because three courts of competent jurisdiction had dismissed a complaint encompassing the same claims and involving the same parties, Plaintiff's latest complaint should be deemed to be barred by *res judicata.*

**C.      Plaintiff's Individual Capacity Suit is Defective and Should be Dismissed.**

**1.      Plaintiff has failed to effect proper service of Defendant, requiring dismissal of this suit pursuant to Fed. R. Civ. P. 12(b)(2), (4) and (5).**

Although Defendant probably has little basis to challenge Plaintiff's method of service for purposes of his official capacity suit against Ms. Riggs, Plaintiff clearly has failed to effect proper service for purposes of his individual capacity suit against her.  The Court lacks personal jurisdiction over the Defendant due to the absence of proper service of process.[7]  It is well-established that in an action against a federal employee in that employee's individual capacity, the Plaintiff must serve the defendant with process in accordance with rules applicable to individual defendants.  See Simpkins v. District of Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997); Lawrence v. Acree, 79 F.R.D. 669, 670 (D.D.C. 1978); Navy, Marshall & Gordon v. U.S. International Development-

---

[7]  The Court of Appeals has held that *pro se* litigants should be given an opportunity to cure defects in service before their complaints are dismissed on that ground.  See Moore v. Agency for Int'l Development, 994 F.2d 874 (D.C. Cir. 1993).  However, because of the numerous reasons for dismissal asserted herein, which are clearly fatal to Plaintiff's causes of action, affording Plaintiff more time to effect proper service would be futile.

Corporation Agency, 557 F. Supp. 484, 489 (D.D.C. 1983); Delgado v. Bureau of Prisons, 727 F.

Supp. 24 (D.D.C. 1989).

Fed. R. Civ. P. 4 requires that a copy of the summons and complaint be delivered to the

defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of

abode with some person of suitable age and discretion" who resides there. Service on the Attorney

General of the United States and the United States Attorney for the district in which the action is

brought, pursuant to the rules applicable to official capacity suits, "does not obviate the requirement

of personal service . . . where the action is in substance against a federal official in his individual

capacity." Lawrence, 79 F.R.D. at 670; Delgado, 727 F. Supp. at 27.

Where, as here, Plaintiff seeks relief against a federal official in that official's individual

capacity, the Court must acquire personal jurisdiction in order to enter a binding judgment, Ali v.

District of Columbia, 278 F.3d 1, 7 (D.C. Cir. 2002); Reuber v. United States, 750 F.2d 1039, 1049

(D.C. Cir. 1984), overruled on other grounds by Kauffman v. Anglo-American School of Sofia, 28

F.3d 1223 (D.C. Cir. 1994); Griffith v. Nixon, 518 F.2d 1195 (2d Cir.), cert. denied, 423 U.S. 995

(1975), and the general rule is that a plaintiff has the burden of establishing personal jurisdiction.

Reuber, supra at 1052. Plaintiff sought to serve Defendant in her individual capacity through an

official of the U.S. Secret Service, but not personally or at the Defendant's home, as required by Fed.

R. Civ. P. 4. R. 9 (Return of Service, dated May 10, 2006). Because the record in this action does

not establish proper personal service upon Defendant in her individual capacity, see id., any claim

against her in her individual capacity is subject to dismissal.

**2.    Defendant Riggs Enjoys Qualified Immunity Against Individual Capacity Liability.**

Plaintiff's claims against Defendant Riggs are based on directives Defendant Riggs gave to other agents at her discretion.  The Supreme Court has stated in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-18 (1982), that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id</u>., citing <u>Procunier v. Navarette</u>, 434 U.S. 555, 565, 98 S.Ct. 855, 861 (1978); <u>Wood v. Strickland</u>, 420 U.S.308, 322 (1975); <u>accord</u>, <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>Crawford-El v. Britton</u>, 523 U.S. 574, 587-88 (1998).  "'[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" <u>Id</u>. at 615, quoting <u>Anderson</u>, 483 U.S. at 640.  Plaintiff makes a number of groundless allegations of criminal violations by Defendant, none of which necessarily set forth constitutional violations.  Even accepting the allegations of the Complaint in a light most favorable to the Plaintiff, the alleged unconstitutional actions of Defendant Riggs occurred in the context of her position as Deputy Director of the Secret Service.  Plaintiff cannot establish that any of these actions represent clear constitutional violations.  Because Plaintiff cannot maintain that Defendant Riggs violated any of Plaintiff's clearly established rights, Defendant Riggs should enjoy qualified immunity, subjecting Plaintiff's claims to dismissal.

**D.    If the Court Determines that this Case Should Not Be Dismissed, then the Case Should be Transferred Because Venue is Improper and Judicial Economy Necessitates Such a Transfer.**

Even if the Court were to determine that the entire case should not be dismissed,  the Defendant alternatively moves the Court to transfer the case to the Northern District of Texas.  Title

28 U.S.C. § 1402(b) provides that "[a]ny civil action on a tort claim against the United States . . . may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Plaintiff is confined in Missouri. By Plaintiff's own description, the acts complained of (stalking, attempted murder, false arrest) occurred primarily in Texas. Compl. at ¶ 6.

Ironically, this Court has recently transferred another case, filed by Plaintiff against the U.S. Secret Service, that was virtually identical to this case and based on the same nucleus of operative facts. Plaintiff filed a complaint in this Court on January 11, 2006, which Judge Kollar-Kotelly determined should be transferred to the U.S. District Court for the Northern District of Texas. See Ruston v. U.S. Secret Service, C.A. 06-0040 (CKK) (Pacer Docket Entry 3) and Ruston v. U.S. Secret Service, 06-0238 (NDTX)(Pacer Docket Entry 3) . The Complaint in C.A. 06-0040 was similar to the instant complaint because it included, *inter alia*, the alleged stalking and attempted murder of Plaintiff in 2004. C.A. No. 06-0040 (CKK), at ¶ 5; C.A. Nos. 06-0040 (DDC) & 06-0238 (NDTX), at ¶ 6 ("On or about November 2, 2005, Barbara S. Riggs of the Secret Service, a Deputy Director, provided the Plaintiff a right to sue letter, after denying his timely claim for damages. **Her denial of claim is fraudulent and gives rise to this litigation."**) (emphasis added); see Compl. in C.A. No. 06-0040 (DDC), which transferred to C.A. No. 06-0238 (NDTX), attached as Exhibit 5. Judge Kollar-Kotelly concluded that the District of Columbia was not the proper venue for Plaintiff's claims because the events forming the basis of the complaint occurred in Texas. Justice and judicial economy required that the case be transferred to the U.S. District Court for the Northern District of Texas because the alleged acts occurred in or around Dallas, Texas and that the alleged primary wrongdoers are located there. See Ruston v. U.S. Secret Service, C.A. 06-0040 (CKK) (Pacer Docket Entry 3) and Ruston v. U.S. Secret Service, 06-0238 (NDTX)(Pacer Docket Entry 3).

Circumstances suggest that the District of Columbia was a forum of last resort for the Plaintiff. U.S. Magistrate Judge William F. Sanderson of the Northern District of Texas (NDTX) had recommended that the transferred case, C.A. 06-0238, be dismissed because Defendant had failed to file a motion for permission to file a complaint in the NDTX and had not paid the required filing fees. <u>See</u> "Findings, Conclusions, and Recommendations of the United States Magistrate Judge," (C.A. No. 06-0238, Pacer Docket Entry 6), attached hereto as Exhibit 6. In his Findings, Conclusions, and Recommendations, Magistrate Judge Sanderson rested his decision on two principal grounds. First, he agreed with Judge Kollar-Kotelly (the transferring Court) that venue was proper in the NDTX because "the alleged conduct [that gave] rise to Plaintiff's FTCA claim occurred" there. Exhibit 6 at 2. Secondly, Judge Sanderson observed that "Plaintiff's decision to file his complaint initially in the District of Columbia was not an inadvertent mistake on his part as he was well aware because of the filing of numerous frivolous lawsuits in the Northern District of Texas, that he was barred from filing any further actions in this District unless he tendered the required filing fee with his complaint or first obtained judicial permission to file a subsequent civil complaint." <u>Id</u>. (citing <u>Ruston v. Dallas County Sheriff's Department, et al.</u>, No. 3:04cv1517-K).

Following this line of reasoning, the District of Columbia is clearly not the proper venue for this case. Judicial economy favors transfer to the NDTX, where the events took place and any witnesses are most likely to be located. Plaintiff's recent history with this Court regarding the substantially similar complaint that was transferred to Texas by Judge Kolar-Kotelly serves as persuasive authority for the transfer of this case as well. Accordingly, we submit that the matter, if

not dismissed, should be transferred to the U.S. District Court for the Northern District of Texas.

See McFarlane v. Esquire Magazine, 74 F.3d 1296,1301 (D.C. Cir.1996).[8]

---

[8] As we argue in this memorandum and inasmuch as Plaintiff has failed to set forth a basis for the relief he seeks, Plaintiff is not entitled to a preliminary injunction since, among other reasons, there is clearly no likelihood of success on the merits. For the same reasons, Plaintiff's Motion to Compel should be denied. Because Plaintiff's claims are frivolous and should be dismissed, his motion for discovery, as well, should be denied. Fed. R. Civ. P. 55(e) expressly prohibits entry of a default judgment against the United States, or an officer or agency thereof, unless the claimant establishes a claim or right to relief. Since, as Defendant establishes herein, Plaintiff cannot do so, his motion for default judgment should be denied. Lastly, Plaintiff's emergency motion for sanctions should be denied since the grounds stated therefor are conclusory, illogical and without foundation.

### III.   **CONCLUSION**

WHEREFORE, for each of the independent reasons set forth above, the Defendant submits that this motion to dismiss or transfer should be granted, and Defendant's motions for preliminary injunction, to compel, for default judgment, for discovery and emergency motion for sanctions all should be denied.

Respectfully submitted,


/s/
_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


/s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202)-616-07

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Defendants' Motion to Dismiss or to

Transfer and Memorandum of Points and Authorities and Omnibus Opposition, supporting exhibits

and proposed order have been made by U.S. Mail, postage prepaid, addressed as follows:

**Lester Jon Ruston**
**R26834-177**
**MEDICAL CENTER FOR FEDERAL PRISIONERS**
**P.O. Box 4000**
**Springfield, Missouri 65801-4000**

on this 25th day of July, 2006.

_____/s/_____
OLIVER W. MCDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739